Summers, C. J.
The Merchants National Bank of Toledo, Ohio, sued the defendant, Louis M. Cole, as administrator of the estate of Lucy A. Cole, to recover upon the following guaranty:
“March 29, 1898.
“I hereby guarantee the payment of all notes of F. E. & G. H. Cole held by the Merchants National Bank, also all renewals of same, or any new loans made to either F. E. or G. LI. Cole by the said bank.
“Lucy A. Cole.”
The answer of the defendant, with other matter, sets up the following:
“That said guaranty was given by her for and on account of loans already made, and thereafter to be made by said bank to said F. E. and G. H. Cole for and on account of work being then done and performed by them in the city of Toledo, Ohio, under contracts with the said city of Toledo, and for no other purpose whatsoever; that at the time said paper was executed the said F. E. and G. H. Cole were engaged in the work of paving streets and building sewers in the city of Toledo, under contracts with the said city, and had been so engaged for a long time prior thereto, and were, and had been doing business with said bank, and had borrowed money from said bank to be used in 'the prosecution of said work, and were at said date indebted to said bank in the sum of thirteen thousand two hundred dollars ($13,200), as evidenced *55 by their promissory notes, for money so borrowed, and on said day applied to said bank for a further loan, the proceeds to be used in the prosecution of said work, and thereupon the said bank demanded of them that their mother, the said Lucy A. Cole, should guaranty the payment of said loans, and thereupon said paper was prepared by one of the officers of said bank and taken to said Lucy A. Cole by one of her sons, and signed by her, and it was not intended or contemplated, either by said bank or said Lucy A. Cole, that such guaranty should apply to any loans made by said bank to said F. E. and G. FI. Cole, or “either of them, other than loans made for and on account of work done under said contracts with the said city of Toledo.
“The said bank had full knowledge of the character of the work in which the said F. E. and G. H. Cole were engaged, and full knowledge of the place or places where said work was being carried on, and of the purposes for which said money was borrowed and used.
“The indebtedness from F. E. and G. H. Cole to the bank, existing on March 29, 1898, and all loans made by said bank to said F. E. and G. H. Cole, or either of them, after said date, for or on account of said contracts, or any work performed under said contracts, have all long since been paid in full.
“About the 1st of January, 1901, the said F. E. and G. H. Cole had substantially completed all ,of the work they had contracted to do in Toledo, under contracts with the said city, and no con *56 tracts were ever entered into between them and the said city of Toledo thereafter. All loans made by said bank to said F. E. and G. FI. Cole, or either of them, for or on account of any work done in Toledo, or any contracts with the city of Toledo, have been fully paid.
“In the summer of 1901 the said F. E. and G. H. Cole entered into a contract for the construction of a tunnel, or a section thereof, in Philadelphia, Pennsylvania, and in September, 1902, they entered into a contract for tunnel work in Dossett, Tennessee.
“Defendant further says that the bank loaned the said' F. E. and G. PI. Cole certain sums of money for and on account of said last two above mentioned contracts, all of which loans were evidenced by promissory notes, and that whatever notes said bank now holds against the said F. E. and G. PI.' Cole were given for moneys borrowed by them on account of the said Philadelphia and Dossett contracts.
“The said bank had full knowledge of these contracts and the nature of the work being done under them, • and made the loans last above referred to, with express reference to said contracts, and with full knowledge that the money was being borrowed for the purpose of being used in the prosecution of the work under said contracts, and without consultation with or notice to said Lucy A. Cole.
“All the said notes now held by said bank are dated February 15, 1904, and are all renewal notes, none of them having been given for loans *57 made at the time they were executed,- but all given in lieu of prior notes. The last loan made by said bank to said F. E. and G. H. Cole or either of them, was made prior to July, 1903. The notes given for the loans now represented by these notes were from time to time renewed, and the times of payment of the said loans extended by said bank without notice to the said Lucy A. Cole, and without knowledge on her part.
“No demand was ever made on said Lucy A. Cole for payment of any part of the indebtedness of the said F. E. and G. FI. Cole to said bank, nor was any notice ever given her as to the amount or condition of said indebtedness, nor did she ever have any knowledge of any extension of the time or times of payment of any part of said indebtedness, nor did she ever have any knowledge that the said F. E. and G. EL Cole had borrowed any money from said bank for or on account of said Philadelphia or Dossett contracts, or either of them, prior, at least, to October, 1903, and she had no knowledge of the execution of the renewal notes now held by said bank, and hereinbefore referred to.”
Upon motion, that part of the answer was stricken out and after trial a judgment was entered for the bank.
The circuit court reversed the judgment for' error in sustaining the motion.
Counsel for the bank contend that this guaranty is an unlimited and continuing guaranty, that it is in no respect equivocal or ambiguous, and that *58 to permit proof of the circumstances set up by the answer would be to permit the written contract to be modified by parol evidence.
An unlimited guaranty may be defined as one that is unlimited both as to time and amount, and a continuing guaranty is one that is not limited in time or to a particular transaction or to specific transactions, but is operative until revoked.
This guaranty is not limited by its terms, nor is it by its terms continuing-. The courts are not in accord as to the rule to be applied in the interpretation of guaranties. In" some cases it is held that a guaranty is to be strictly construed in favor of the guarantor, in others that it is to be liberally construed in favor of the creditor. The Hartwell & Richards Co. v. Moss, 22 R. I., 583. In this state it is settled that, “A guarantor, like a surety, is bound only by the express terms of his contract. The language used is' to be understood in its plain and ordinary sense, as read in the light of the surrounding circumstances, the situation of the parties, and the object of the guaranty, and that construction given which most nearly conforms to the intention of the parties. If the language is equally capable of each construction, the one will be adopted which construes it to be limited, and not the one which construes it to be continuing.” Morgan v. Boyer, 39 Ohio St., 324; Hall v. Hall, 32 Ohio St., 184; The Cambria Iron Co. v. Keynes et al., 56 Ohio St., 501.
But counsel contend that the rule adopted in these cases is applicable only when the instrument is equivocal or ambiguous, and that here the fair *59 and natural meaning of the words clearly imports that the guaranty was intended to be continuing.We do not understand that these cases except such instruments from the general rule that parol evidence is inadmissible to limit or to enlarge the terms of a written instrument, but that they hold that an unlimited guaranty is equivocal or ambiguous in respect to being continuing, in the absence of words that clearly import such an intention.
In such cases the instrument is to be construed in the light of the surrounding circumstances, but this does not mean, as some cases would seem to indicate, that the written instrument is to be supplanted by a new contract evolved by the court from the parol evidence. Attention should be given to what is meant by surrounding circumstances, and it should be remembered that they may not be used to contradict or vary the terms of the instrument. In The Cambria Iron Co. v. Keynes et al., 56 Ohio St., 501, it is held: “In construing a contract of guaranty, the object should be to ascertain the intention of the parties ; and, as in construing all contracts, the words employed by the parties should be construed in the light afforded by the circumstances surrounding them at the time it was made.” Monnett v. Monnett, Admr., 46 Ohio St., 30, holds, that oral testimony is not admissible to contradict or vary the terms of written agreements, but is admissible to prove the circumstances under 'which they were made, to enable -the courts to put themselves in the place of the parties, with all the in *60 formation possessed by them, the better to understand the terms employed in the contract, and to arrive at the intention of the parties.
In Morrell v. Cowan, 7 Ch. Div. (L. R.), 151, where the court construed a guaranty reading as follows: “In consideration of you having at my request agreed to supply and furnish goods to C. [her husband], I do hereby guarantee to you .the sum of £500. This guarantee is to continue in force for the period of six years and no longer,” it was held that the guaranty was limited to goods actually supplied to the husband after it was given. Thesiger, L. J., in his opinion says: “I agree that in determining the construction of this instrument the court is ' entitled to look at the surrounding circumstances; that is to say, it is entitled to consider, first, who the parties were; secondly, in what position they were; and, thirdly, what the subject-matter of the agreement was. Now we find that Morrell was a leather factor, and that Cowan was a shoe manufacturer, and was indebted to him for certain goods supplied to him in the way of trade. Cowan was anxious to get a further supply, which Morrell was willing to furnish if he had a guaranty from Mrs. Cowan, who had separate estate. To these circumstances .we may look, but we can not go further. It is not open to the parties to shew that there was a parol bargain that Mrs. Cowan should guarantee her husband’s past debts, or that the guarantee should be confined to future debts; that question must rest upon the written instrument alone.”
It follows that the court of common pleas erred *61 in not permitting a statement of any of the surrounding circumstances and that the circuit court was not in error in reversing the judgment on that ground.

Judgment affirmed:

Crew, Spear, Davis and Price, JJ., concur.